# UNITED STATES DISTRICT COURT

for the

Southern District of Texas

Houston Division

| | |
|---|---|
| Acute Care EMS, LLC <br> *Plaintiff* <br> v. <br><br> U.S. Department of Health and Human Services; Sylvia Mathews Burwell, Secretary, Department of Health and Human Services; Trailblazer Health Enterprises, LLC; Health Integrity, LLC, $Q^2$ Administrators, LLC; Chase Consulting Group, LLC <br> *Defendants* | Case No. _____ <br> *(to be filled in by the Clerk's Office)* <br><br> Jury Trial: (check one)    ☐ Yes   ☐ No |

**COMPLAINT FOR CIVIL CASE ALLEGING**

**(28 .S.C. §1331; Federal Question)**

Plaintiff, by and through undersigned counsel, bring tis Complaint against the above named Defendants, their employees, agents, and successors in office, and in support thereof allege the following upon information and belief:

**INTRODUCTION**

1. This is a civil action in which Plaintiff is seeking to recover damages for the wrongful implementation and execution of 42 U.S.C. §1395ff also known as §1869 of the Social Security Act ad 42 U.S.C §1395ddd which required the Defendants to follow these rules in the fair determination of claims during the appeals process.

2. Plaintiff seeks monetary damages due to the violations of federal Constitution and statutory law.

1

## JURISDICTION AND VENUE

3. This action in which the United States is a defendant arises under the Constitution and laws of the United States. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§1331 and 1346.

4. Supplemental Jurisdiction is conferred on this court pursuant to 28 USC §1367

5. Venue is proper in this district pursuant to 28 U.S.C. §§1391(b)(2) and 1391(e) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

## PARTIES

6. Plaintiff, Acute Care EMS, Inc., is a Texas Corporation and provides ambulance services n Houston, Texas. The registered office 525 North Sam Houston Parkway, Suite 370 D, Houston, Texas 77060.

7. Defendant, the US Department of Health and Human Services (hereinafter "HHS") is an executive agency of the United States Government and is responsible for providing effective health and human services including regulating the Medicare Program which is the subject of this lawsuit.

8. Defendant Sylvia Mathew Burwell is the Secretary of the United Stated Department of Health and Human Services. In this capacity, she is responsible for the operation and management of HHS. Defendant Burwell is sued in her official capacity only.

9. Defendant Trailblazer Health Enterprises, LLC, a Limited Liability Company based in Texas, and is a Medicare Administrative Contractor of HHS. The registered office is located at, 1999 BRYAN STREET, SUITE 900, DALLAS, TEXAS 75201, its registered office.

10. Defendant Health Integrity, LLC d/b/a HI Program Integrity, LLC, is a Limited Liability Company based in Texas and is a Zone Program Integrity Contractor for HHS. The registered office is located at, 1999 BRYAN STREET, SUITE 900, DALLAS, TEXAS 75201.

11.  Defendant Q$^2$ Administrators, LLC, a Limited Liability company based in South Carolina and is a Qualified Independent Contractor. The registered office is located at, 300 ARBOR LAKE DRIVE, SUITE 1350, COLUMBIA, SOUTH CAROLINA 29223.

12.  Defendant Chase Consulting Group, LLC, a Limited Liability Company based in Virginia, and is a Healthcare Review Consultant for Trailblazer. The registered office is located at, 8309 CENTRAL AVENUE, ALEXANDRIA, VIRGINIA, 22306 in FAIRFAX COUNTY VIRGINIA.

## FACTUAL ALLEGATIONS

13.  Plaintiff, Acute Care EMS, Inc., operates an ambulance company in Houston, Texas.

14.  Plaintiff completed the Medicare's Enrollment Application (CMS855i) had been approved under the Medicare Enroll Application procedures

15.  Many of the patients that Plaintiff transports receive Medicare. As long as the ambulance transport satisfies the medical necessity requirement under the Social Security Act and Medicare coverage criteria, Plaintiff would receive payment from Medicare for services offered to Medicare patients.

16.  Trailblazer Health Enterprises, LLC is a Medicare Administrative Contractor ("MAC") assigned to Plaintiff's region. On a month to month basis, lasting from 2008 until 2010, Trailblazer required Acute Care EMS Inc., to submit documents necessary to conduct Prepayment Reviews to determine if Medicare would pay for the ambulance services provided to Medicare patients.

17.  These claims were deemed appropriate and Plaintiff was paid.

18.  During the course of business, Acute Care EMS developed a working relationship with several private and public businesses. For example, Plaintiff had a contract with the Texas Department of Corrections transporting prison patients from the prison to the hospital.

19.  In 2010, Health Integrity, LLC, a Zone Program Integrity Contractor ("ZPIC") began an audit of Acute Care EMS covering all claims submitted beginning July 1, 2008 through June 30, 2010.

20. Post-payment audits extrapolate a sample from a universe of claims to determine the total overpayment.

21. Plaintiff objected, in writing, to the statistical sampling methodology used by Health Integrity, stating that Defendant did not followed the guidelines provided by the Centers for Medicare & Medicaid Services Manual ("CMS Manual").

22. During the time of the audit, Acute Care EMS was permitted continue business however, Plaintiff was not able to submit claims for payment for Medicare until the audit was complete.

23. Although the Department of Corrections contract ended in 2014, Plaintiff's services were no longer requested because the company was unable to staff appropriately to meet the needs of the contract due to loss of revenue. Available employees had to be redirected to address the information requested for the audit.

24. The audit determined that Plaintiff had a 100% error rate in claims which resulted in overpayments. Plaintiff sought reconsideration.

25. $Q^2$ Administrators, a Medicare Qualified Independent Contractor ("QIC") conducted the second level reconsideration review.

26. Upon reconsideration, $Q^2$ reduced the error rate to 96% and further reduced the sample size overpayment from $16,169.06 to $14,451.00. [1]

27. Plaintiff appealed this determination to the Administrative Courts under 42 USC §1395ff.

28. The Post-payment audit, conducted by Health Integrity, LLC lasted over one year. During this time plaintiff was not permitted to submit claims for pending and future Medicare services—the majority of his clients. Because of this, the company was forced to cease operations in 2011.

29. In 2015, after Plaintiff exhausted the appeals process, Administrative Law Judge P. Arthur McAfee determined that the statistical sampling used by defendants was invalid and therefore

---

[1] The sample overpayment amount was $14,451.00. Therefore, the total overpayment amount for the universe was $1,061,224.00

Plaintiff was only liable for the actual overpayment amounts identified in the claims that were part of the sample.

30. The ALJ also determined that the contractors failed to present Plaintiff with a complete accounting report of the post-payment audit, thereby violating section 1893(f) provision of the Act governing post-payment audits.

31. Ultimately, on January 13, 2015 ALJ P. Arthur McAfee ordered defendants to process the claims and any funds received from Plaintiff based on the invalid overpayment demands were ordered to be returned.

32. Plaintiff suffered actual economic damages in the amount of $1,000,000.00 per year in lost income beginning in 2010 and continuing until presently for a total of $7,000,000.00.

## FIRST CLAIM FOR RELIEF
### (Negligence Against Defendants)

33. Defendants had a responsibility to exercise the degree of care that a reasonably careful person would have used to avoid making harmful representations and in ascertaining the accuracy of information given to others.

34. Defendants breached this duty by improperly instituting a Post-payment Audit against the Plaintiff for claims that had already been approved by an Administrative Law Judge in through the Prepayment Review process. Further, during the audit, Trailblazer Health Enterprises, LLC failed to follow extrapolation guidelines and incorrectly calculated the overpayment amount. Defendants committed various and numerous mistake and omissions throughout the Post-payment audit process in violation of their own rules and guidelines found in 42 U.S.C. 1395ddd and 42 U.S.C 1395ff.

35. Plaintiff's injuries were proximately caused by Defendants' negligent disregard of said duty and Plaintiff suffered economic damages due to that breach. In instituting the Post-payment Audit, defendants interfered with Plaintiff's ability to collect from Medicare for an exorbitant amount of time and thereby caused Plaintiff's operations to cease in 2011.

36. Defendant's violations have caused, and will continue to cause Plaintiff to suffer undue hardship, irreparable injury, and economic injury.

## SECOND CLAIM FOR RELIF
### (Negligent Misrepresentation Against Defendants)

37. Plaintiff hereby incorporates by reference all stated paragraphs set forth herein.

38. Defendants, Medicare contractors, made written representations to Plaintiff that the company had been overpaid in excess of $1,000,000.00 for claims submitted to Medicare for ambulance services provided by Plaintiff.

39. Defendants made the representation to Plaintiff in the course of Defendant's business as Medicare Contractors. As Medicare Contractors, Defendants are tasked reviewing payments on claims, submitted by providers that they believed to be false or inaccurate. Medicare would the pay the Contractors for these services.

40. Defendants had a pecuniary interest in the misrepresentation because Medicare paid the contractors for investigating and auditing providers like the Plaintiff. Each of the Defendants benefitted financially from auditing the Plaintiff despite the previous Prepayment Review and no incentive in the speedy disposition of the audit.

41. Defendants made the representations for the guidance of Medicare. During the audit of Plaintiff, Medicare suspended all payments for current and future ambulance services provided to Medicare patients

42. Defendant's representation was a misstatement of claim error and Medicare Overpayment. Health Integrity determined that the claim error was 100%. $Q^2$ Administrators LLC determined that the claim error was 96%. Ultimately, the Administrative Law Judge determined that the claim error was much lower and Plaintiff owed approximately $9,000.00 in overpayment. Despite requiring Plaintiff to have each claim reviewed on an individual basis from 2008-2010 before payment was made, Defendant Trailblazer Health Enterprise LLC, reported plaintiff's claims as suspicious and

prompted Health Integrity LLC to audit the company. Health Integrity, LLC and $Q^2$ Administrators, LLC, despite having knowledge of the Prepayment Reviews, chose to audit the Plaintiff.

43.  Defendants did not take reasonable care in obtaining the appropriate information in determining whether Acute Care EMS, LLC's claims were valid. As discussed above, defendants were aware of the Prepayment Review of Plaintiff's claims conducted in 2008, 2009, and 2010. Despite having actual knowledge that the claims had been previously approved, Defendants instituted an audit on Plaintiff's claims from July 1, 2008 through June 30, 2010.

44.  As a service provider for Medicare patients, Plaintiff justifiably relied on Defendant's misrepresentation that Medicare had overpaid some of the submitted claims and complied with the extensive requests for medical records. Plaintiff also allocated business assets and personnel to address the medical records request. Plaintiff also spent years and company money appealing the Post-payment Audits.

45.  Defendant's misrepresentation caused economic injury to the Plaintiff. Plaintiff, a small business, was forced to allocate company time and revenue to obtain the paperwork necessary for the audit. Employees for the Plaintiff who service client accounts were forced to focus on the extensive audit, thus damaging client relationships. During the course of the audit, Plaintiff was unable to collect on current and future Medicare claims—a large part of the company's revenue.

46.  Defendants' violations have caused, and will continue to cause Plaintiff to suffer undue hardship, irreparable injury, and economic injury.

### THIRD CLAIM FOR RELIEF
**(Fraud Against the Defendants)**

47.  Plaintiff hereby incorporates by reference all stated paragraphs set forth herein.

48.  Defendants made material representation to Plaintiff by asserting that a Post-payment audit was necessary to determine whether Medicare claims had been overpaid. This representation is

material, because during Post-payment audits Plaintiff is prohibited from submitting claims for pending and future services provided to Medicare patients.

49. The material representation was false because the individual claims and subsequent payments had previously been deemed appropriate by an Administrative Law Judge in the individual Prepayment Reviews.

50. When the representation was made, Defendants knew the representation was false, because they were ones who requested that each payment, beginning in 2008, be reviewed prior to payment. These payments had previously reviewed and approved on a claim by claim basis.

51. Defendants made the representation that Plaintiff's claims had been overpaid with the intent that Plaintiff would be forced into an unwarranted audit and asked to repay $1,061,224.00.

52. In accordance with Defendant's request for audit, Plaintiff submitted all requested information and during the course of the audit was unable to collect pending or future billing for Medicare patients;

53. Plaintiff suffered economic injury during the audit, because the company was unable to collect on claims for services provided to Medicare patients—the majority of the company's revenue. This drastic reduction in revenue caused the company to cease operations in 2011.

54. Defendants' violations have caused, and will continue to cause Plaintiff to suffer undue hardship, irreparable injury, and economic injury.

### FOURTH CLAIM FOR RELIEF
(**Tortious Interference of Existing Contract with HHS Against All Other Defendants**)

55. Plaintiff hereby incorporates by reference all stated paragraphs set forth herein.

56. Plaintiff had a valid contract with HHS under the Medicare Act. Plaintiff provided Ambulance transportation for Medicare patients. Once there was a determination of medical necessity under the Social Security Act, Medicare would pay Plaintiff for those services.

57.	Defendants, as Medicare Contractors, knew of Plaintiff's business relationship with Medicare and Plaintiff's interest in the contract. In fact, Health Integrity, LLC was assigned to the Plaintiff's zone to review of claims.

58. Defendants willfully and intentionally interfered with the existing Medicare contract between HHS and the Plaintiff. As Medicare Administrative Contractors on behalf of HHS, Defendants were aware of the business relationship between Plaintiff and HHS. Defendants knew that instituting a Post-payment audit against Acute Care EMS, Inc., would prohibit Plaintiff from collecting current and future Medicare claims for ambulance services provided while the audit was being conducted.

59. Defendant's interference with Plaintiff's contract proximately caused injury to Plaintiff. Plaintiff suffered damage because Defendants' interference prevented Plaintiff from continuing the Plaintiff's business relationship with HHS. When Acute Care EMS, Inc. was unable to collect from HHS for the services provided to Medicare patients for over one year while the audit was conducted, the company lost a substantial amount of revenue. This lack of revenue caused the company to cease operation in 2011.

60. Defendants' violations have caused, and will continue to cause Plaintiff to suffer undue hardship, irreparable injury, and economic injury.

## FIFTH CLAIM FOR RELIEF

**(Tortious Interference with Prospective Relations Against Defendants)**

61. Plaintiff hereby incorporates by reference all stated paragraphs set forth herein.

62. Plaintiff had an ongoing relationship with HHS as a provider of ambulance services to Medicare patients. Plaintiff would transport Medicare patients and Medicare would pay the claim for services on the patient's behalf.

63. Defendants knew of plaintiff's business relationship with Medicare and intentionally interfered with it. As Medicare Administrative Contractors on behalf of Medicare, Defendants were aware of the business relationship between Plaintiff and Medicare. Defendants knew that instituting a

9

Post-payment audit against Acute Care EMS would prohibit Plaintiff from collection on current and future Medicare claims for ambulance services provided during while the audit was being conducted.

64. Defendant's Post-payment Audit was independently tortious regardless of the effect those actions had on plaintiff's business relationship with Medicare. The Defendant's, in instituting the audit, failing to follow the CMS Guidelines, and delaying the audit process is actionable independently of the effect on the business relationship between Plaintiff and Medicare. Specifically, Plaintiff also asserts a claim of Negligence, Negligent Misrepresentation, Fraud, and Conspiracy.

65. Plaintiff suffered damage because defendant's interference prevented plaintiff from continuing the Plaintiff's business relationship with Medicare. When Acute Care EMS, Inc. was unable to collect from Medicare for the services provided to Medicare patients for over one year while the audit was conducted, the company lost a substantial amount of revenue. This lack of revenue caused the company to cease operation in 2011.

66. Defendants' violations have caused, and will continue to cause Plaintiff to suffer undue hardship, irreparable injury, and economic injury.

### SIXTH CLAIM FOR RELIEF
**(Conspiracy Against Defendants)**

67. Plaintiff hereby incorporates by reference all stated paragraphs set forth herein.

68. Defendants worked together to accomplish one or more unlawful acts. As discussed above, the Contractors were paid by Medicare to investigate and audit providers for claims submitted for payment. To prolong the audit, several Contractor employees altered documents

69. Defendants had a meeting of the minds to accomplish those unlawful acts. Specifically, to prolong the audit, several Contractor employees altered documents submitted by the Plaintiff for the audit.

70. Plaintiff suffered damages as a proximate result of Defendants' actions. The audit of Plaintiff's 2008-2010 claims lasted over one year. During such time Plaintiff was not permitted to submit claims for current and future ambulance services provided to Medicare patients.

71. Defendants' violations have caused, and will continue to cause Plaintiff to suffer undue hardship, irreparable injury, and economic injury.

### SEVENTH CLAIM FOR RELIEF
### (Malicious Civil Prosecution)

72. Plaintiff hereby incorporates by reference all stated paragraphs set forth herein.

73. Plaintiff was a party to a, administrative proceeding instituted by and continued against the Plaintiff. Ultimately, Plaintiff appealed to and went before an Administrative Law Judge.

74. Defendants sought reimbursement for alleged Medicare overpayment.

75. Defendants acted with malice in instituting the proceedings. Even after the Defendants became aware of their mistakes, including but not limited to overpayment calculations and failure to provide appropriate notice to Plaintiff, Defendants continued the administrative proceedings against Plaintiff thereby actin with malice.

76. Defendants did not have probable cause to institute the proceeding because they were aware of the previous decision during the prepayment reviews that the claims were justified and approved by the ALJ.

77. The Post-payment Audit proceeding was terminated in Plaintiff's partial favor on January 13, 2015 by ALJ P. Arthur McAfee.

78. Defendant's wrongful conduct caused the Plaintiff the following damages: injury to their reputation and goodwill. During the audit, Plaintiff's revenues decrease drastically, causing the company to lose value and hindering its ability to meet client needs. Thereby harming its reputation and goodwill.

79. Defendants' violations have caused, and will continue to cause Plaintiff to suffer undue hardship, irreparable injury, and economic injury.

## EXEMPLARY DAMAGES

Plaintiff requests exemplary damages for all of the above claims for relief.

80. Plaintiff would show that on the occasion in question Defendants made certain representations to Plaintiff with the intention of inducing the Plaintiff to rely upon such representations when Defendant knew such representations were false.  Plaintiff would show that Plaintiff relied upon such representations believing them to be true and suffered severe damages as a result.

81. Defendants acts or omissions described above, when viewed from the standpoint of the Defendants at the time of the act or omission, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plaintiff and others.  Defendants had actual, subjective awareness of the risk involved in the above described acts or omissions, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiff and others.

82. Based on the facts stated herein, Plaintiff requests exemplary damages be awarded to Plaintiff from the Defendants.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment as follows:

83. Assume Jurisdiction over this case.

84. Award the Plaintiff reasonable costs, actual damages, exemplary damages, and expenses.

85. Grant such other and further relief as the court deems equitable and just under the circumstances.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information , and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirement of Rule 11.

                              Respectfully Submitted,

                              /s/_____
                              Dominique M. Boykins
                              State Bar No.
                              13415 Reads Court
                              Houston, Texas 77015
                              (281) 660-5624
                              dmboykins42@gmail.com
                              **ATTORNEY FOR PLAINTIFF**